HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
GRIFFIN ESTES, CA Bar #322095
REED GRANTHAM, CA Bar #294171
Assistant Federal Defenders
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Attorneys for Defendant
JULIO SANDOVAL

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:22-cr-00233-JLT-SKO |
|---|---|
| Plaintiff, | DEFENDANT JULIO SANDOVAL'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE*; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| vs. | |
| JULIO SANDOVAL, | Date: September 22, 2025 |
| Defendants, | Time: 10:30 a.m. |
| | Judge: Hon. Jennifer L. Thurston |

**TO:     ERIC GRANT, UNITED STATES ATTORNEY, MICHAEL TIERNEY AND VERONICA ALEGRIA, ASSISTANT UNITED STATES ATTORNEYS, COUNSEL FOR PLAINTIFF:**

**PLEASE TAKE NOTICE** that on September 22, 2025, at 10:30 a.m., or as soon as the matter can be heard before the Honorable Jennifer L. Thurston, United States District Judge for the Eastern District of California, defendant Julio Sandoval, through undersigned counsel, will bring on for hearing the following motions *in limine*.

**Table of Contents**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ................................................... 1

III.    MEMORANDUM OF POINTS AND AUTHORITIES ............................ 4

   1.    Ms. Gaviola's Statements Are Not Admissible Against Mr. Sandoval and Should be Excluded. .......................................................................................................... 4

   2.    This Court Should Exclude All Evidence Concerning Events that Occurred After the Offense Was Completed on August 22, 2021 .................................................. 9

   3.    This Court Should Enter an Order Instructing the Government to Refrain from Using the Terms "Kidnapping," "Abduction," or Other Similarly Misleading and Prejudicial Terms.... 13

   4.    This Court Should Preclude the Government from Eliciting Testimony About the Use of Restraints During the Transport. ......................................................... 15

   5.    This Court Should Exclude Any Reference to Whether Sandoval had Policies to Coordinate with Law Enforcement, or To Verify Existing Restraining Orders. ...................... 17

   6.    This Court Should Preclude the Government from Eliciting Testimony About the Invalid Service of the Temporary Restraining Order. ......................................... 19

   7.    This Court Should Exclude Any Reference to Any Lawsuits, Inquiries, or Unsubstantiated Allegations Against Mr. Sandoval Under Rule 404(b). ................................. 20

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Berger v. United States*, 295 U.S. 78, 88-89 (1934) ............................................................... 14

*Crawford v. Washington*, 541 U.S. 36 (2004) ......................................................................... 7

*Emery v. Emery*, 45 Cal.2d 421, 429 (1955) ........................................................................... 16

*Hall v. United States*, 419 F.2d 582, 588 (5th Cir. 1969) ...................................................... 14

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) ................................................. 8

*Old Chief v. United States*, 519 U.S. 172, 179–81 (1997) ..................................................... 17

*People v. Curtiss*, 116 Cal. App. Supp. 771, 775 (1931) ....................................................... 16

*People v. Stewart,* 188 Cal.App.2d 88, 91 (1961) .................................................................. 16

*Toussie v. United States*, 397 U.S. 112, 115 (1970) ............................................................... 10

*United States v. Boettcher*, 780 F.2d 435, 437 (4th Cir. 1985) .............................................. 14

*United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000) ............................................ 4

*United States v. De Rosa*, 670 F.2d 889, 898 (9th Cir. 1982) ................................................. 9

*United States v. Drebin*, 557 F.2d 1316, 1332 (9th Cir. 1977) .............................................. 10

*United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) ............................................. 10, 12

*United States v. Floyd*, 81 F.3d 1517 (10th Cir. 1996) .......................................................... 14

*United States v. Guzman-Bruno*, 27 F.3d 420, 423 (9th Cir. 1994) ....................................... 11

*United States v. Herrera-Medina*, 609 F.2d 376, 379 (9th Cir. 1979) .................................. 12

*United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ....................................................... 18

*United States v. Holden*, 806 F.3d 1227, 1231 (9th Cir. 2015) ............................................. 10

*United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016) ............................................... 5

*United States v. Layton*, 720 F.2d 548, 556-57 (9th Cir. 1983) .............................................. 5

*United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) .......................................... 14

*United States v. Liera-Morales*, 759 F.3d 1105, 1109 (9th Cir. 2014) ................................... 8

*United States v. Longee*, 603 F.2d 1342, 1344-45 (9th Cir. 1979) ...................................... 7, 8

*United States v. Lopez*, 484 F.3d 1186, 1194 (9th Cir. 2007) ........................................... 11, 12

*United States v. Loveland*, 825 F.3d 555 (9th Cir. 2016) ........................................................ 5

*United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir.1986)..................................................... 9

*United States v. Marr*, Case No. 14-cr-00580-PJH, 2017 WL 1540815, at 14-15 (N.D. Cal. Apr. 28, 2017) ........................................................................................................................................ 7

*United States v. Marsh*, 144 F.3d 1229, 1241 (9th Cir. 1998)......................................................... 7

*United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987)................................................... 10

*United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) ................................................ 12

*United States v. Morales*, 11 F.3d 915, 921 (9th Cir. 1993)........................................................... 10

*United States v. Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009) ........................................................... 7

*United States v. Peralta*, 941 F.2d 1003, 1007 (9th Cir. 1991) ....................................................... 4

*United States v. Ratcliffe*, 550 F.2d 431, 433 (9th Cir. 1976)......................................................... 8

*United States v. Reitmeyer*, 356 F.3d 1313, 1322–23 (10th Cir. 2004) ........................................ 10

*United States v. Rodriguez-Moreno*, 526 U.S. 275, 789-281 (1999)............................................. 11

*United States v. Sanchez*, 532 F.2d 155 (9th Cir. 1976) .................................................................. 7

*United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir. 1987)......................................................... 6

*United States v. Smith*, 740 F.2d 734, 738 (9th Cir. 1984) ............................................................ 12

*United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) ..................................................... 14

*United States v. Weatherspoon*, 410 F.3d 1142, 1152 (9th Cir. 2005) .......................................... 15

*United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988)................................................. 5

**Statutes**

18 U.S.C. § 1201.............................................................................................................................. 11

18 U.S.C. § 1201(a) ........................................................................................................................ 14

18 U.S.C. § 2262(a)(2)............................................................................................................. passim

18 U.S.C. § 3237.............................................................................................................................. 10

8 U.S.C. § 1326(a)(2)....................................................................................................................... 11

Ca. Civ. Proc. Code § 527.6............................................................................................................ 13

Ca. Fam Code §§ 3003..................................................................................................................... 15

Ca. Fam. Code § 243(a) ................................................................................................................... 19

Ca. Fam. Code § 3010(a) ................................................................................................................. 15

Ca. Fam. Code § 6340................................................................................ 19

Ca. Health & Safety Code § 1596.653 ...................................................... 16

**Other Authorities**

80 Cal. Op. Att'y Gen. 203 (1997) ........................................................... 16

California Bill Analysis, A.B. 705 Assem., 1999–2000 Reg. Sess. (Sept. 2, 1999)..................... 16

**Rules**

Fed. R. Evid. 401 ............................................................................. 9, 18, 19

Fed. R. Evid. 402 ............................................................................. 9, 18, 19

Fed. R. Evid. 403 ............................................................................. 12, 17, 18

Fed. R. Evid. 404(b)............................................................................. 20

Fed. R. Evid. 801(d)(2)(E) ...................................................................... 4

## I. INTRODUCTION

Pursuant to the Court's July 22, 2025, Second Amended Pretrial Order, ECF Dckt. # 128, Mr. Sandoval's counsel has met and conferred with counsel for the government on anticipated issues concerning the admissibility of evidence. Mr. Sandoval requests that this Court consider and resolve the following issues regarding the admissibility of evidence.

## II. STATEMENT OF RELEVANT FACTS

In July of 2021, Mr. Sandoval was working at a boarding school and operating a small business in Missouri. ECF Dckt. # 1, ¶ 2. He had no prior relationship with his now co-defendant, Shana Gaviola, until she hired his company to transport her minor son (MV) to a boarding school in Missouri. However, unbeknownst to Mr. Sandoval, a months-long conflict had been unraveling between Ms. Gaviola and her son.

As outlined in the Indictment, on July 13, 2021, MV had applied for a domestic violence restraining order against his mother, Ms. Gaviola. *Id.*, ¶ 3. On July 14, 2021, the Fresno County Superior Court issued a temporary restraining order pending a hearing on MV's request for a domestic violence restraining order against Ms. Gaviola. *Id.*, ¶ 5. On July 15, 2021, Clovis Police Department Officer McElroy attempted to serve the temporary restraining order on Ms. Gaviola. *Id.*, p. 2, ¶ 6. When Officer McElroy located Ms. Gaviola, he did not have a physical copy of the temporary restraining order. Exh. A, p.2. However, Officer McElroy read Ms. Gaviola the order and emailed her a copy. *Id.* The temporary restraining order prevented Ms. Gaviola from contacting her son, MV, either directly or indirectly. Exh. B, p. 2. The judge that issued the temporary restraining order set a hearing on August 23, 2021, to determine whether to impose a domestic violence restraining order. *Id.*, p. 1.

Separately, on July 15, 2021, MV filed a petition to be an emancipated minor. Exh. C. The petition did not specify who his legal guardian was. *Id.* MV requested that neither of his parents be notified about the possible emancipation. *Id.*, p. 1. The Fresno County Superior Court judge ordered that Ms. Gaviola be notified of the petition, but not MV's father, Rodney McGee. *Id.* The judge also set a court hearing on the emancipation petition on August 18, 2021. *Id.*, p.2. At the hearing on August 18, 2021, Ms. Gaviola appeared and was formally served with the July

14, 2021 temporary restraining order that prohibited her from contacting, directly or indirectly, her son, MV. Exh. H, p. 2.

Almost immediately thereafter, Ms. Gaviola began efforts to enroll her son, MV, in a boarding school. Cell phone records indicate that Ms. Gaviola contacted no less than five schools, with several offering to pick up her son who she alleged was a runaway. One of the schools that responded to her inquiries was Agape Boarding School (Agape), located in Stockton, Missouri. Agape was a "boarding school for teenage boys exhibiting bad behavior or failing academics." Exh. D. On August 19, 2021, Ms. Gaviola submitted an application to Agape on behalf of her son. Exh. E. In her application to Agape, Ms. Gaviola told Agape the MV had run away to be with an older woman and that he could benefit from Agape's educational program. Exh. E, p. 7. As part of her application to the school, she indicated that she had custody of MV and that MV's father has never been involved in the child's life. *Id.*, p. 7.

Once MV's application was accepted, staff at Agape provided Ms. Gaviola with the names of several companies that could assist in transporting her son to the school. On that list was a business run by Mr. Sandoval. At the time, in addition to working at Agape,[1] Mr. Sandoval ran a business called Safe, Sound, and Secure Youth Ministries (SSSYM) that assisted in transporting minors, with their legal guardian's written authorization, to various boarding schools across the country. On August 19, 2021, Ms. Gaviola contacted Mr. Sandoval, and thereafter hired his company, SSSYM, to transport her son, MV, from Fresno, California, to Agape, in Stockton, Missouri. In employing Mr. Sandoval, Ms. Gaviola provided Mr. Sandoval with an executed and notarized power of attorney form for the care and custody of MV, an executed and notarized authorization for SSSYM to transport MV to Agape, and an executed and notarized authorization of cost and travel agreement. Ms. Gaviola, however, failed to inform either Agape or Mr. Sandoval that her son had obtained a temporary restraining order against her and that she was prohibited from contacting or otherwise interacting with her son.

Unaware of the existence of the temporary restraining order against Ms. Gaviola, Mr.

---

[1] While Mr. Sandoval's title at Agape was "dean of students" he had no role in reviewing MV's application to the school or admission to the school. Mr. Sandoval's role involved running sports camps, pastoring, and some aspects student life, however he was not employed in an administrative or managerial capacity.

Sandoval sent two transportation agents from SSSYM—Robert Graves and Jason Moore—to Fresno, California, to facilitate the transport of MV to Agape, in Stockton, Missouri, on August 21, 2021. Exh. F, p. 3. On the morning of August 21, 2021, Mr. Graves and Mr. Moore met with Ms. Gaviola in Fresno, California. Also present were two investigators hired by Ms. Gaviola, as well as Ms. Gaviola and her boyfriend. Following the meeting, Mr. Graves and Mr. Moore went to the Gateway Ice Center in Fresno and waited outside in the parking lot. The two investigators hired by Ms. Gaviola entered Gateway Ice Center and escorted MV outside to Mr. Graves and Mr. Moore, who then put restraints on MV, placed him in their car, and began to transport him to Agape. *Id.*

At some point during the transportation, Mr. Sandoval received a call from an officer at the Fresno Police Department. Exh. G, p. 6. This officer was attempting to find out why MV had been placed in a car and taken away from the Gateway Ice Center parking lot. Mr. Sandoval explained that MV was being transported to a boarding school in Missouri at his mother's request and with her authorization. The officer requested to speak to the transportation agents and MV, and Mr. Sandoval instructed his lead transport agent, Mr. Graves to contact the officer from the Fresno Police Department. Mr. Graves and the officer from the Fresno Police Department had a subsequent video call where the officer confirmed MV's safety and the transportation agents' travel plans. The officer informed Mr. Graves of the existence of a temporary restraining order that restrained Ms. Gaviola from MV, however, when Mr. Graves asked the officer for instructions "[t]he officer told [Mr.] Graves to continue on his trip, and he would let him know more when he had it." *Id.*, p.6. Accordingly, the transport agents continued to drive MV to Agape, in Stockton, Missouri.

The following day, on August 22, 2021, the transportation agents and MV arrived at Agape. Once at Agape, MV was in the custody of the school. As part of Ms. Gaviola's application for MV to attend Agape, Ms. Gaviola provided executed and notarized forms, authorizing Agape to make decisions regarding MV's care. Accordingly, while at Agape, MV was supervised by staff members at Agape. Specifically, Mr. Sandoval's supervisor, Bryan Clemenson, facilitated MV's communications with his lawyer in Fresno and interfaced with

MV's father, who visited Agape first on August 23, 2021, and then on August 29, 2021, when he ultimately picked MV up from the school. Exh. H, p. 4-5.

Following MV's transport to Agape, Mr. Sandoval had several follow-up conversations with an officer from the Fresno Police Department. Over the course of these conversations, Mr. Sandoval indicated that "he was completely unaware of the restraining order, the CPS case, or the ongoing emancipation case" and he told the officer several times "that he will do whatever it takes to try and make th[e] situation right." Exh G, p. 7.

### III.    MEMORANDUM OF POINTS AND AUTHORITIES

**1.    Ms. Gaviola's Statements Are Not Admissible Against Mr. Sandoval and Should be Excluded.**

Ms. Gaviola's statements are inadmissible against Mr. Sandoval because they are hearsay and their introduction would violate the Sixth Amendment. Specifically, they are not admissible under the hearsay exception for co-conspirator statements, because Mr. Sandoval and Ms. Gaviola were not co-conspirators. Further, the introduction of her testimonial statements without an opportunity for cross-examination violates the Confrontation Clause. Because there is no other basis to admit the statements, and because a curative instruction would be inadequate to protect Mr. Sandoval's trial rights, Ms. Gaviola's statements should be excluded.

A. <u>This Court Should Require the Government to Identify Prior to Trial Any Alleged Co-Conspirator Statements and Preview the Evidence It Believes Brings Such Statements Within Rule 801(d)(2)(E).</u>

None of Ms. Gaviola's out-of-court statements are admissible against Mr. Sandoval as statements of a co-conspirator. Mr. Sandoval understands that the government intends to introduce various of Ms. Gaviola's out-of-court statements under Federal Rule of Evidence 801(d)(2)(E). "Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)); *United States v. Peralta*, 941 F.2d 1003, 1007 (9th Cir. 1991) ("[I]f a district court

is persuaded by a preponderance of the evidence that the declarant and the accused were members of a conspiracy, the declarant's statement is admissible."). Because there was no conspiracy in this case, and that the government will be unable to show that a conspiracy existed, none of the statements made by Ms. Gaviola are admissible against Mr. Sandoval unless they fall under some other exception to the hearsay rule. Any curative instruction will be insufficient as Ms. Gaviola's statements will be heavily relied upon to convict him.

Given the lack of any conspiracy in this case, the government cannot introduce Ms. Gaviola's statement against Mr. Sandoval. "To prove a conspiracy […] the government must establish: (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016) (citation and internal quotation marks omitted). To prove an agreement to commit a crime, it is not sufficient for the government to prove that the defendant committed the crime in question. It must prove that the defendant agreed with at least one other person to commit that crime. *See United States v. Loveland*, 825 F.3d 555 (9th Cir. 2016). This case undoubtedly involves a mother who took measures to have her son taken to a boarding school. There is zero evidence however that Ms. Gaviola told Mr. Sandoval about the existence of MV's temporary restraining order against her. More importantly, there is zero evidence that Mr. Sandoval had any sort of agreement with Ms. Gaviola to engage in any criminal activity. Importantly, the Ninth Circuit has strictly construed the "in furtherance of the conspiracy requirement." *See United States v. Foster*, 711 F.2d 871 (9th Cir. 1983). Mere conversations between co-conspirators, or merely narrative declarations among them, are not made "in furtherance" of a conspiracy. *United States v. Layton*, 720 F.2d 548, 556-57 (9th Cir. 1983). To be "in furtherance," the statements must further the common objectives of the conspiracy. *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988).

Here, there is no evidence of the existence of a conspiracy between Ms. Gaviola and Mr. Sandoval. A conspiracy implies the parties had some joint criminal enterprise. However, here, Ms. Gaviola enlisted Mr. Sandoval into her criminal plan without telling him—or anyone for that matter—that she had been served with a temporary restraining order that prohibited her from

engaging in the exact conduct that she ultimately engaged in. Notably, transportation companies, like the kind that Mr. Sandoval was operating, are widespread. Indeed, evidence derived from Ms. Gaviola's phone shows that she was in contact with several other transportation companies who were offering their services to her to effectuate the transportation of MV. Mr. Sandoval, however, was the unlucky person Mr. Gaviola ended up hiring for this transport. In this respect, Mr. Sandoval was not a co-conspirator of Ms. Gaviola since he quite literally had no knowledge of the fact that MV had obtained a temporary restraining order against Ms. Gaviola that prevented her from directly or indirectly contacting him. This is further reflected by the fact that Mr. Sandoval repeatedly informed officers from the Fresno Police Department that he would "do whatever it takes to try and make this situation right." Exh. G, p. 7. Any suggestion Mr. Sandoval was conspiring with Ms. Gaviola to commit a crime while also attempting to assist and cooperate with officers from the Fresno Police Department strains credulity. In sum, there is no evidence of any agreement to commit an unlawful act between Ms. Gaviola and Mr. Sandoval. Without a conspiracy, any attempt by the government to offer Gaviola's statements against Mr. Sandoval violates Rule 801(d)(E)(2).

If the government intends to introduce statements made by Ms. Gaviola during the trial, the government should have to identify precisely what they plan on eliciting, and under what authority the evidence is admissible against Mr. Sandoval. Consistent with what the Seventh Circuit Court of Appeals has described as the "preferable procedure" for the introduction of co-conspirator statements, Mr. Sandoval requests that the Court "require the government to preview the evidence which it believes brings the statements within the coconspirator rule [before delving into the evidence at trial]." *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (alteration in original) (quoting *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir. 1987)). Such a procedure minimizes the risk of a mistrial should the Court find the government's evidence insufficient to satisfy the showing required under Rule 801(d)(2)(E). *See Shoffner*, 826 F.2d at 630 (cautioning that the procedure the trial court employed, in which the trial court "essentially took on faith the government's assertion that the statements were made in furtherance of the conspiracy," risked a "costly mistrial"). Specifically, Mr. Sandoval requests an order from the

Court requiring that the government disclose the following information with a list of the statements it intends to introduce at trial:

> (a) Source of the alleged coconspirator statement (i.e., text message, Facebook post, interview, etc.);
> (b) Identity of the declarant;
> (c) Summary of evidence showing that a conspiracy existed at the time the declarant made the statement;
> (d) Summary of evidence showing that the declarant knew about and participated in the conspiracy; and
> (e) Summary of evidence showing that Mr. Sandoval knew about and participated in the conspiracy.

*See, e.g.*, *United States v. Marr*, Case No. 14-cr-00580-PJH, 2017 WL 1540815, at 14-15 (N.D. Cal. Apr. 28, 2017) (setting forth the court's protocol for admission of co-conspirator statements). Mr. Sandoval requests that the government provide this information to Mr. Sandoval as soon as possible so that the Court resolve any argument as to admissibility.

B. <u>The Introduction of Ms. Gaviola's Statements Violate the Confrontation Clause.</u>

If Ms. Gaviola does not testify at the trial, and her statements are presented in the joint trial, "we are confronted at the outset by a clear violation of [Sandoval's] right of confrontation," which implicates not only the Sixth Amendment, but also the Fifth Amendment right to a fair trial. *United States v. Longee*, 603 F.2d 1342, 1344-45 (9th Cir. 1979); *see, e.g., United States v. Sanchez*, 532 F.2d 155, 157-58 (9th Cir. 1976) (reversing where the most damaging evidence with respect to the existence of a conspiracy came from the admissions of a non-testifying co-defendant). Many of Ms. Gaviola's statements are testimonial, especially those given under interrogation. *See Crawford v. Washington*, 541 U.S. 36, 52, 53 n.4 (2004). "Confrontation Clause error occurs at admission of a testimonial statement without an opportunity to cross-examine." *United States v. Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009); *see, e.g.*, *United States v. Marsh*, 144 F.3d 1229, 1241 (9th Cir. 1998) (the denial of the defendant's opportunity to impeach the witness against him, which may have altered how the jury viewed the evidence, violated the Confrontation Clause). Should Ms. Gaviola's prior statements be introduced, and assuming that Mr. Sandoval has no opportunity to impeach her testimony, his Sixth Amendment rights will be violated.

Here, Ms. Gaviola's statements are undoubtedly testimonial in nature. A statement is

testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (internal quotation marks omitted). Interrogations by law enforcement officers "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" fall within the ambit of testimonial hearsay. *United States v. Liera-Morales*, 759 F.3d 1105, 1109 (9th Cir. 2014). Simply put, every statement that Ms. Gaviola has made in this case is testimonial. Should her statements be introduced against her, the Confrontation Clause will be violated. Thus, to avoid the violation of Mr. Sandoval's Sixth Amendment rights, the Court should preclude the government from introducing any of Ms. Gaviola's prior statements at trial.

C. A Limiting Instruction is Insufficient.

A limiting instruction will not adequately protect Mr. Sandoval's trial rights. The reliability of Ms. Gaviola's statements is a central issue for Mr. Sandoval as her statements are central to Mr. Sandoval's guilt. The government will need to introduce Ms. Gaviola's statements in order to tie Mr. Sandoval to this scheme – what she told him, and what she said to other people are key aspects of the case. This is why a curative instruction, limiting the admissibility of Ms. Gaviola's statements to her only is insufficient. *See e.g. United States v. Ratcliffe*, 550 F.2d 431, 433 (9th Cir. 1976) ( noting that under such circumstances it would be "highly unlikely that the jury could be relied upon to follow such an instruction."). Thus, admitting her hearsay statements—which are often unreliable, contradictory, or confusing—in order to establish Mr. Sandoval's guilt at trial, is inherently unfair. There will be no way that the jury could consider Ms. Gaviola's statements against her and her only because their cases are so clearly intertwined. "The disregard of incriminating evidence as against only one defendant in a joint trial has been termed 'a mental gymnastic which is beyond, not only (the jury's) powers, but anybody's else.'" *Longee*, 603 F.2d at 1345 (citation omitted.) This is a situation where a jury will necessarily impute Ms. Gaviola's guilt to Mr. Sandoval. *See United States v. Satterfield*, 548 F.2d 1341, 1346 (9th Cir. 1977) (finding impermissible joinder where the evidence was stronger as to one defendant). This is so regardless of whether the Court attempts to limit the jury's consideration

of the evidence. Thus, Ms. Gaviola's prior statements should not be admitted in the joint trial, even if the Court were to instruct the jury to consider her statements only as to her.

**2.      This Court Should Exclude All Evidence Concerning Events that Occurred After the Offense Was Completed on August 22, 2021.**

Nothing that occurred after August 22, 2021, is relevant to the charged offense in this case. Indeed, 18 U.S.C. § 2262(a)(2) requires a person cause another person to travel across state lines by force, coercion, duress or fraud, and in so doing, engage in conduct that violates a protective order. *See* 18 U.S.C. § 2262(a)(2). Accordingly, once the travel across state lines was accomplished, the criminal conduct is completed and anything that occurring thereafter is irrelevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Only evidence that is relevant is admissible." *United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir.1986); Fed. R. Evid. 402. Matters are irrelevant if "they do not bear on any issue involving the elements of the charged offense." *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992). The indictment alleges the criminal conduct occurred between August 18, 2021, and August 29, 2021. ECF Dckt. # 1, ¶ 12. However, any and all travel across state lines was completed by August 22, 2021, when MV arrived at Agape in Stockton, Missouri. *Id*, ¶ 9. Since all travel was completed by August 22, 2021, any reference to conduct occurring after that date is irrelevant to any element of the offense charged in this case.

Even under the government's theory of the charge, the period after which the travel was completed has no bearing on the elements of the offense—a key threshold for relevance. Indeed, the government has previously indicated its belief that "[t]he elements here involve *whether a defendant caused a person to travel, whether the travel was caused by force or other misconduct*, and whether the defendant engaged in conduct that in fact violated a protective order." ECF Dckt. # 103, p. 5, l. 17-20 (emphasis added). Once the interstate travel ends, as it did here on August 22, 2021, the offense has been completed. Any other conduct that occurs after the completion of the offense, from August 22, 2021, to August 29, 2021, is simply other acts

evidence and is irrelevant to the charged offense. It is irrelevant because it has no tendency to prove a fact of consequence. All the evidence of what happened to MV after the travel was completed relates to the impact that the offense had on him. However, that evidence is not relevant to the jury's determination of guilt. *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) (victim impact is not relevant to the charged offense).

It is black-letter law that an offense is committed when it is completed, *see Toussie v. United States*, 397 U.S. 112, 115 (1970), that is, when each element of the offense has occurred. *See United States v. Drebin*, 557 F.2d 1316, 1332 (9th Cir. 1977); *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). The government may argue that a restraining order violation is a continuing offense. 18 U.S.C. § 3237. However, the doctrine of continuing offenses is inapplicable in this case because 18 U.S.C. § 2262(a)(2)—the offense charged here—describes a discrete event that is directly tied to the travel across state lines. As such, the instant offense is distinct and does not "clearly contemplate a prolonged course of conduct." *Toussie*, 397 U.S. at 121; *see also United States v. Reitmeyer*, 356 F.3d 1313, 1322-23 (10th Cir. 2004) ("If a crime is discrete, it is less likely Congress 'assuredly intended' the crime to be a 'continuing offense'."). The Supreme Court has held an offense is "continuing" when either: (1) "the explicit language of the substantive criminal statute compels such a conclusion;" or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as continuing one." *Toussie*, 397 U.S. at 115. The Ninth Circuit has generally applied the principle that crimes are not considered continuing unless explicitly stated in the statute or inherently implied by the nature of the offense. *See United States v. Holden*, 806 F.3d 1227, 1231 (9th Cir. 2015).

Here, Congress did not specify that a violation of 18 U.S.C. § 2262(a)(2) is a continuing offense. Moreover, the charged offense is not one that is inherently continuing. "The classic example of a continuing offense is conspiracy." *United States v. Morales*, 11 F.3d 915, 921 (9th Cir. 1993) (citation omitted). Another example of a continuing offense is illegal re-entry, in violation of 8 U.S.C. § 1326. *United States v. Guzman-Bruno*, 27 F.3d 420, 423 (9th Cir. 1994). There, the statute makes it a crime for "any alien" to be "at any time found in the United States." 8 U.S.C. § 1326(a)(2). Such language clearly contemplates a crime of a continuous nature. By

contrast, 18 U.S.C. § 2262(a)(2) does not contain comparable language. Accordingly, because the instant offense is not a continuing offense, evidence related to what occurred after the travel across state lines ended is irrelevant as it does not have any bearing on any of the elements of the charged offense.

The government will likely analogize the restraining order violation in this case to the crime of kidnaping, which has been determined to be a continuing offense. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279-281 (1999) (holding that kidnaping is a continuing offense because the "conduct constituting the offense" continues throughout the journey and "does not end until the victim is free"). However, kidnaping requires "hold[ing]" a person. 18 U.S.C. § 1201. Thus, by its nature, kidnaping is inherently a continuing offense. The instant offense is categorically different than kidnaping. This offense proscribes specific forms of conduct that are limited in time. *See* 18 U.S.C. § 2262(a)(2). As such, the elements of the offense target discrete acts, not enduring behavior. Moreover, the gravamen of the offense is causing the interstate travel in violation of a restraining order, not holding a person for some ulterior motive.

In an analogous case, the Ninth Circuit has found that when a person illegally transports undocumented migrants, the offense is completed when the migrants are dropped off. *United States v. Lopez*, 484 F.3d 1186, 1194 (9th Cir. 2007) (holding that a "brings to" offense under § 1324(a)(2) terminates when the initial transporter drops the aliens off at a location in the United States). Further, in *Lopez*, the Ninth Circuit explained that "under certain circumstances a defendant who does not physically transport aliens across the border may be held criminally liable for aiding and abetting a 'brings to' offense." *Lopez*, 484 F.3d at 1199. To convict under an aiding and abetting theory, the government must prove that the defendant "willingly associated himself with the venture and participated therein as something he wished to bring about," *id*. (internal quotation marks omitted), in that the defendant "knowingly and intentionally commanded, counseled, or encouraged the initial transporter to commit the 'brings to' offense." *Id*., at 1200. In *Lopez*, the Ninth Circuit specified that the offense "ends when the person who transports the aliens to the country terminates his act of transportation and drops off the aliens in the United States." *Id*., at 1191. As in *Lopez*, the instant charged offense was completed once the

SSSYM transportation agents dropped MV off at Agape. That is the moment when MV was no longer traveling in interstate commerce, thereby ending the commission of the alleged offense.

Ultimately, given the travel across state lines was completed on August 22, 2021, all conduct that occurred after that date is irrelevant to the charged offense. If there were any ambiguity as to whether this should be a continuing offense, the Court should construe the statute to limit the applicability to conduct not clearly contemplated by the statute. *United States v. Smith*, 740 F.2d 734, 738 (9th Cir. 1984) ("[C]ourts are reluctant to find criminal liability for those activities which are only questionably within its ambit.").

Federal Rule of Evidence 403 provides a separate independent basis to exclude such evidence. Indeed, Rule 403 allows a court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. It is the "government's burden to show that the evidence offered is relevant, and that it is more probative than prejudicial." *United States v. Herrera-Medina*, 609 F.2d 376, 379 (9th Cir. 1979). To carry this burden, the government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). Any reference to conduct occurring after the transportation was completed will be unfairly prejudicial, confuse the issues, and mislead the jury. "'Unfair prejudice' refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' or 'evidence designed to elicit a response from the jurors that is not justified by the evidence.'" *Ellis*, 147 F.3d at 1135.

As previously set forth, Mr. Sandoval, through his company, SSSYM, was hired by Ms. Gaviola to effectuate the transportation of MV to Agape. However, once at Agape, Mr. Sandoval was not directing or in charge of the decisions that were made with respect to MV's continued presence at the school. Accordingly, the events that transpired after August 22, 2021, and until MV's departure from the Agape on August 29, 2021, do not implicate Mr. Sandoval, and for that reason are not relevant to the offense that is charged in this case. Although the government may

argue that Mr. Sandoval's title as "dean of students" at Agape would make him responsible for MV at the school, the evidence establishes that Mr. Sandoval did not have a role in admitting MV to Agape or determining how long MV stayed at the school. Notably, Mr. Sandoval's supervisor, Bryan Clemenson, was the person in charge at Agape, who facilitated MV's conversations with MV's lawyer in Fresno, and who interfaced with MV's father when he visited Agape. Exh. H, p. 5. Accordingly, any evidence that the government introduces pertaining to why MV stayed at the school for a week after his arrival would mislead the jury, confuse the issues, and be unduly prejudicial as to Mr. Sandoval.

In the alternative, Mr. Sandoval moves to exclude any evidence related to any conduct that occurred after the expiration of the temporary restraining order that was issued. By its terms, the temporary restraining order expired the morning of August 23, 2021. Exh B, p. 1. In this case, the statute requires that Mr. Sandoval "engage in conduct that violates the portion of *a* protection order." 18 U.S.C. § 2262(a)(2) (emphasis added.) Although, the Fresno County Superior Court issued an order on August 23, 2021, at a hearing on the restraining order request, which extended the initial order – the extension constitutes a separate order. *See* Ca. Civ. Proc. Code § 527.6 (distinguishing "temporary restraining order" and "order after hearing"). Given that the statute pertains to the violation of a single order, this case cannot involve conduct which allegedly involved the violation of a separate order. For that reason, any conduct which occurred after August 23, 2021, should be excluded under F.R.E. 402.

**3.      This Court Should Enter an Order Instructing the Government to Refrain from Using the Terms "Kidnapping," "Abduction," or Other Similarly Misleading and Prejudicial Terms.**

From the outset of the investigation in this case, officers from the Fresno Police Department referred to the incident that occurred in this case as a "highly coordinated kidnapping." The government would later repeat this at the initial detention hearing in this matter, referring to the charged conduct as a "kidnapping."[2] At trial, the government should be precluded from using this, and other comparably inflammatory language. Federal law is clear that the conduct at issue in this case is categorically not kidnapping. *United States v. Boettcher*,

---

[2] Notably, the Indictment does not use such language and instead refers to the incident as a "transport." ECF Dckt. # 1, ¶ 7.

780 F.2d 435, 437 (4th Cir. 1985); *United States v. Floyd*, 81 F.3d 1517 (10th Cir. 1996) (holding that immunity for a parent from kidnapping his or her own minor child extended to mother who enlisted assistance of two males to kidnap daughter from father.); *see also,* 18 U.S.C. § 1201(a) ("except in the case of a minor by the parent thereof […].") Accordingly, use of the word kidnapping (or any other similar terms such as "abduction") will merely serve to mislead and inflame the passions of the jury.

As this Court is well aware, a prosecutor bears an overriding duty to ensure that a defendant receives a fair and impartial trial. *Berger v. United States*, 295 U.S. 78, 88-89 (1934) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to government impartiality is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); *see also Hall v. United States*, 419 F.2d 582, 588 (5th Cir. 1969) (noting that a United States Attorney "is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he [or she] owes a heavy obligation to the accused"). A prosecutor abandons that duty when he or she makes "comments calculated to arouse the passions or prejudices of the jury." *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999). Such comments pose serious risk to the administration of justice, due in large part to juries' innate confidence that prosecutors will conduct themselves with "integrity, fairness, and impartiality." *Hall*, 419 F.2d at 588 (citation omitted) (internal quotation mark omitted); *accord United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) ("Because the jury will normally place great confidence in the faithful execution of the obligations of a prosecuting attorney, improper insinuations or suggestions are apt to carry more weight against a defendant than such statements by witnesses."). When a prosecutor's inflammatory remarks prejudice a defendant's constitutional right to a fair trial, a mistrial may be warranted. *See, e.g.*, *United States v. Weatherspoon*, 410 F.3d 1142, 1152 (9th Cir. 2005) (reversing and remanding for a new trial due to the prosecutor's vouching for witnesses and repeated pleas for jurors to convict the defendant so they could be "comfortable knowing there's not convicted felons on the street with loaded handguns").

Here, should the government elicit any testimony, or otherwise refer to this incident as a "kidnapping" or an "abduction," Mr. Sandoval will be unfairly prejudiced. The terms are inflammatory and may cause the jury to render their decision based on emotion rather than an application of the law to the facts. As this incident did not involve anything that can legally or factually be referred to as a "kidnapping" or an "abduction" the Court should enter an order prohibiting the government from using the term or otherwise eliciting testimony in which the witnesses use the term.

**4.      This Court Should Preclude the Government from Eliciting Testimony About the Use of Restraints During the Transport.**

Evidence that shows that MV was brought to Missouri in restraints should be excluded as irrelevant and unduly prejudicial under Federal Rule of Evidence 402 and Federal Rule of Evidence 403. At the time of the offense, Ms. Gaviola was MV's mother, and she had parental and custodial rights over him. The existence of the temporary restraining order did not by its terms interfere with Ms. Gaviola's custodial rights over her son. *See* Cal. Fam. Code § 3010(a) ("The mother of an unemancipated minor child and the father […] are entitled to the custody of the child."). Legal custody gives parents the "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." Cal. Fam Code §§ 3003, 3006. Moreover, by order of a court in Tennessee, Ms. Gaviola was the primary custodian of MV. When she hired Mr. Sandoval and his transportation company to physically transport MV from Fresno, California, to Agape, in Stockton, Missouri, she granted Mr. Sandoval and Mr. Graves, the lead transport agent, power-of-attorney, as such they possessed her rights at the time of the transport. Thus, setting aside the issue of the temporary restraining order, Ms. Gaviola was within her rights to hire SSSYM to bring MV to Agape, and for him to restrained in that process.

Any evidence related to the use of restraints is unduly prejudicial and has little to no probative value. More importantly, the use of restraints was not otherwise illegal and is irrelevant to the jury's determination of the charge at issue. Thus, any reference to the use of restraints will be unfairly prejudicial, confuse the jury, and mislead the jury. In fact, there are a significant number of transportation companies that provide for the transportation of minors to boarding

schools. Some of those companies specifically advise parents that they will be using restraints in the transportation process. So long as parents transfer power of attorney to the transportation company, the transportation agents are permitted to use reasonable, and lawful means to ensure that the transport occurs safely. To illustrate this point, the California State Legislature has regulated the minor transportation industry. In drafting the laws related to companies like SSSYM, the legislature specifically considered and rejected a proposal that would have prohibited the use of restraints during a transportation like the one that occurred in this case. *Compare* California Bill Analysis, A.B. 705 Assem., 1999-2000 Reg. Sess. (Sept. 2, 1999), *with* Ca. Health & Safety Code § 1596.653 (illustrating that the statute's current language regarding enforcement provisions for transport services lacks a ban on restraints, although proposed legislation contained a ban). "A parent has a right to reasonably discipline by punishing a child and may administer reasonable punishment without being liable for a battery." *Emery v. Emery*, 45 Cal.2d 421, 429 (1955); *People v. Stewart,* 188 Cal.App.2d 88, 91 (1961). This includes the right to inflict reasonable corporal punishment. *See* 80 Cal. Op. Att'y Gen. 203 (1997); *People v. Curtiss*, 116 Cal. App. Supp. 771, 775 (1931). Parents can also transfer that authority through power of attorney. Given that the California legislature allows the use of restraints during the transportation of minors and given that Ms. Gaviola conveyed her parental authority to Mr. Sandoval and his company, the evidence regarding the use of restraints is both irrelevant and unduly prejudicial. Such evidence is not relevant to a fact of consequence and merely inflames the jury.

The government will likely argue that the use of restraints is a form of "force" that the statute contemplates, and thus the use of restraints is relevant to the charged offense. *See* 18 U.S.C. § 2262(a)(2) ("by force, coercion, duress or fraud"). However, the term "force" in this context implies that the conduct was unlawful—specifically, that force was used to "engage in conduct" that violated a protective order. Here, the restraints were lawfully used by transportation agents and were not employed to carry out any conduct that violated the restraining order. Introducing this fact to the jury would be unduly prejudicial and risk provoking an emotional, rather than reasoned, verdict. Federal Rule of Evidence 403 allows a court to

exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 179-81 (1997). Reference to the restraints is the exact type of thing that a juror would focus on, which may cloud their ability to dispassionately determine whether the government has established all the elements of the offense.

Moreover, there is no evidence that Mr. Sandoval or Ms. Gaviola specifically requested that MV be placed in restraints during transportation. As such, the use of restraints does not pass basic relevance standards. If the defendants did not specifically direct the transport agents to use the restraints, then any mention of that conduct is not only irrelevant but also highly prejudicial as it will cause the jury to have an emotional reaction and it may encourage the jury to make a decision on an improper basis. In this case, Mr. Graves was the lead transport agent that was in charge of MV's transport. Mr. Graves gave a statement to the FBI in which he indicated that not all transports involved the use of restraints, and that the lead transport agent makes the decision about whether and how to use restraints. Exh. I. Here, there is no indication that Mr. Sandoval ever instructed the transport agents to use restraints on MV. As such, the jury should not hear evidence that MV had restraints placed on him during the transport, both because the use of restraints, in this context, does not in and of itself constitute unlawful and because there is no evidence that Mr. Sandoval played any role with respect to the use of restraints in this case. For the foregoing reasons, the Court should preclude the government from eliciting testimony regarding the use of restraints.

**5. This Court Should Exclude Any Reference to Whether Sandoval had Policies to Coordinate with Law Enforcement, or To Verify Existing Restraining Orders.**

At least one of the investigating officers involved in this case asked Mr. Sandoval whether his transport company had any policies in place at the time of the offense that dealt with

investigating the existence of restraining orders or coordinating with local authorities prior to conducting a transportation of a minor. Exh. G, p. 6. Such evidence is irrelevant to any issue in this case. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *see also* Fed. R. Evid. 401 (defining relevance). Even if such evidence had some slight probative value, that probative value is substantially outweighed by the danger that such evidence would cause the defense unfair prejudice. *See* Fed. R. Evid. 403. The law does not impose an obligation on Mr. Sandoval to inquire into the existence of any possible temporary restraining order or to coordinate with law enforcement prior to carrying out a transport. Moreover, any reference to Mr. Sandoval's policies, or his lack of coordination with law enforcement runs the risk of unfair prejudice, confusing the issues, and misleading jury. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."). Mr. Sandoval is not charged with a crime that requires the government to show anything related to whether he or his company inquired into the existence of any possible temporary restraining orders. Thus, eliciting testimony that suggests that he could have or should have done so is not appropriate and risks confusing the issues and misleading the jury.

Moreover, any mention of this would be misleading to the jury, would confuse the issues, and would be a waste of time. A witness's comment suggesting that Mr. Sandoval's company should have checked for the existence of any possible restraining orders would create an unnecessary distraction. Mr. Sandoval would then be compelled to introduce evidence regarding the highly unusual situation in which a child obtained a restraining order against their mother, leaving no adult with legal custody of the child. To counsel's knowledge, this is the only known case where a child has secured such an order against a parent, resulting in an unrelated third party being accused of violating a restraining order to which he was neither subject to nor informed of. For obvious reasons, it would be unreasonable for a transport company to have a policy to verify the existence of any possible restraining order for all possible passengers. Indeed, Mr. Sandoval and individuals running similar transportation companies would have to contact nearly every law enforcement agency in the country in order to operate, which is neither

required by law nor practical. Thus, the Court should prohibit the government from eliciting any testimony related to whether Mr. Sandoval had a policy for verifying the existence of any temporary restraining orders under Federal Rules of Evidence 402 and 403.

**6.      This Court Should Preclude the Government from Eliciting Testimony About the Invalid Service of the Temporary Restraining Order.**

Clovis Police Department Officer McElroy attempted to effectuate service of the temporary restraining order on Ms. Gaviola on July 15, 2021. ECF Dckt. # 1, p. 2, ¶ 6. But, when Officer McElroy located Ms. Gaviola, he did not have a physical copy of the restraining order. Exh. A. The officer emailed her a copy and read her the order. *Id*. This did not constitute lawful service of the restraining order. Under California law, service of the restraining order must be accomplished by physically giving the restraining order to the restrained party. *See* Cal. Fam. Code § 243(a) ("If a petition under this part has been filed, the respondent shall be personally served with a copy of the petition, the temporary restraining order, if any, and the notice of hearing on the petition. Service shall be made at least five days before the hearing."); Cal. Fam. Code § 6340 (personal service can be waived by court only after a hearing). Accordingly, the attempted service on July 15, 2021, was invalid and had no legal effect.

Because the improper service of the restraining order has no legal effect, the jury should not hear testimony regarding that incident. Such commentary does not pass standard thresholds of relevance and would be unduly prejudicial. It is irrelevant because it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The invalid service does not help the jury determine whether either defendant violated 18 U.S.C. § 2262(a)(2). Indeed, in order to "engage in conduct that violates a portion of the protection order" one must be subject to the order. 18 U.S.C. § 2262(a)(2). The invalid service thus has no bearing on whether either defendant engaged in such conduct. Evidence regarding the improper service is not only irrelevant, but it is also inadmissible under Rule 403 of the Federal Rules of Evidence. Such testimony would also be a waste of time, confuse the issues, and mislead the jury. Moreover, testimony that Ms.

Gaviola was read the order and was emailed the order is cumulative as the government can already prove proper service through other means, specifically, that Ms. Gaviola was subsequently served with the temporary restraining order on August 18, 2021. Thus, the Court should prohibit the government from eliciting any testimony related to the improper service that occurred on July 15, 2021.

**7.      This Court Should Exclude Any Reference to Any Lawsuits, Inquiries, or Unsubstantiated Allegations Against Mr. Sandoval Under Rule 404(b).**

Agape and Mr. Sandoval are the subject of a lawsuit by MV and they were the subject of criminal inquiry by the Missouri state authorities. Moreover, the government has produced in discovery an unsubstantiated allegation related to Mr. Sandoval. The lawsuit or inquiries related to Mr. Sandoval are irrelevant to the case at hand and should be excluded under Rule 402 and Rule 403 of the Federal Rules of Evidence.[3] Furthermore, Rule 404(b) further prohibits any mention of any ancillary civil allegations. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The rule indicates that such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Because none of these permissible uses of character evidence are at issue in this case, the Court should exclude any testimony related to the ancillary legal matters which pertain to Agape and Mr. Sandoval. Lastly, the government is required to give notice of their intent to use any 404(b) evidence. To date, the government has not provided such notice. Thus, this Court should enter an order precluding the government from eliciting testimony related to those lawsuits and criminal inquiries both in their case-in-chief or in their rebuttal.

---

[3] On June 9, 2025, the parties met and conferred regarding this motion. The government noted that they would not be referring to these matters during their case in chief.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: August 22, 2025

*/s/ Griffin Estes*
GRIFFIN ESTES
REED GRANTHAM
Assistant Federal Defenders
Counsel for Defendant
JULIO SANDOVAL