ERIC GRANT
United States Attorney
VERONICA M.A. ALEGRÍA
JOSEPH D. BARTON
Assistant U.S. Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-00233-JLT |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT GAVIOLA'S FOURTH MOTION TO DISMISS THE INDICTMENT |
| v. | |
| SHANA GAVIOLA, | DATE: October 7, 2025<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |
| Defendant. | |

On October 3, 2025, defendant Gaviola filed her fourth Motion to Dismiss the Indictment, alleging prosecutorial misconduct and discovery violations. ECF No. 177 (the "Motion" or "Mot."). The Motion fails to allege facts that rise to the level of constitutional or other violations of law supporting dismissal. It is also untimely.

Defendant's Motion alleges that she had a brief, public encounter and subsequent conversation with a prosecutor and an FBI agent assigned to her case. But Defendant's Motion does not allege that there was any discussion regarding the substance of the case or any other legal matters during that encounter and conversation. Crucially, Defendant also includes in her Motion an averment that the government immediately disclosed the matter to her then-defense attorney and that the attorney decided not to take any action. For these reasons, the Motion should be denied.

//

//

## I. THE MOTION IS UNTIMELY

### A. Defendant's Motion is Untimely Under Rule 12

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Courts may set deadlines for pretrial motions and deny untimely filed motions. Fed. R. Crim. P. 12(c)(1), (3); *see, e.g.*, *United States v. Biden*, 745 F. Supp. 3d 1001, 1004 (C.D. Cal. 2024) (denying motion to dismiss for untimeliness); *United States v. Baker*, No. CR 22-102-BLG-DLC, 2024 WL 278916, at *4 (D. Mont. Jan. 25, 2024), *aff'd*, No. 24-1242, 2025 WL 342862 (9th Cir. Jan. 30, 2025) (striking untimely motion to dismiss).

Here, the Court set a deadline for the defense to file Rule 12 motions (including motions to dismiss) by August 25, 2025. ECF No. 130 (ordering Rule 12 briefing schedule and setting a hearing date). Defense counsel timely filed three motions to dismiss or strike, to which the government objected. ECF Nos. 136, 137, 138, 144. The Court heard argument on Gaviola's Rule 12 motions on September 22, 2025, and then denied all three of them. ECF Nos. 164, 166.

Defendant filed the instant motion on October 3, 2025 — four days before trial. ECF No. 177. On its face, the Motion is untimely, as it is well after the deadline set by the Court.

### B. There Is No Good Cause for the Untimeliness of the Motion

Although Rule 12(c)(3) allows the Court to consider an untimely motion "if the party shows good cause," the defense has not shown good cause for the untimely motion. To the contrary, the Motion admits that both Gaviola and her defense counsel have known of this incident for over two years, as her then-attorney was called on the very night it occurred and had the opportunity to discuss the issue with her. Mot. at 3. Therefore, there is no good cause for delay.

Defendant's decision to hire new defense counsel also cannot constitute good cause for the untimely Motion, either on the facts or the law. New counsel wishing to pursue alternative arguments that former counsel had the opportunity to raise does not constitute good cause. *See, e.g.*, *United States v. Dennis*, 41 F.4th 732, 740 (5th Cir. 2022) (holding that prior counsel's failure to file a pretrial motion to suppress was not a sufficient showing of good cause because prior counsel was aware of the facts underlying a potential motion to suppress); *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) ("[T]he law is clear that no good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date.");

*United States v. Shevchenko*, No. 5:22-CR-00250-EJD-1, 2025 WL 2614980, at *4 (N.D. Cal. Sept. 9, 2025) (finding no good cause to hear defendant's untimely Rule 12 motion when prior counsel had sufficient information to timely raise the motion).

As Defendant's Motion recognizes, moreover, current defense counsel was apprised of the facts well before the Motion was filed. Mot. at 3. Indeed, there "is a mention of it in a lengthy interview the Defendant had with an online periodical in June of this year. . . ." Mot. at 2-3. Once the government discovered the interview and article, it produced a copy in discovery to current defense counsel on July 10, 2025 (found at GAVIOLA_00011222, GAVIOLA_00011131 – 11140). *See* Mot. at 3 (The article "was provided this summer" to counsel). The government also attached this article as Exhibit 8 to its Motion *in Limine*, which was filed under seal and emailed to defense counsel on August 22, 2025. *See* ECF No. 134. All of this occurred before Defendant's Rule 12 deadline of August 25, 2025.

Finally, Gaviola avers in her Motion that, at the very latest, current defense counsel confirmed the issue "through a telephone conversation with the AUSA on September 27, 2025," but does not explain why defense counsel did not file the Motion until the Friday before trial was set to begin. Mot. at 4.

The decision of whether to consider an untimely motion for good cause "lies in the discretion of the district court." *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003) (citing *United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir. 1984)). Here, the defense has not met its burden to show that there was good cause for her delay. Therefore, the Court should deny the motion as untimely.

## II. THE MOTION FAILS TO SHOW PROSECUTORIAL MISCONDUCT

Defendant's motion does not show that there was prosecutorial misconduct and certainly no misconduct sufficient to warrant dismissal of the indictment. The standard for dismissal of the indictment in this situation is "extremely high." *United States v. Harris*, 997 F.2d 812, 815 (9th Cir. 1993). The misconduct must "be so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (internal citations and quotations omitted); *see also Darden v. Wainwright*, 477 U.S. 168, 179-82 (1986) (finding that, even though the state prosecutor's closing arguments referenced the death penalty and referred to the defendant as an "animal," the trial was not rendered fundamentally unfair).

A. **There Was No Sixth Amendment Violation**

To succeed on a prosecutorial misconduct claim that is premised on the government's interference with the defendant's Sixth Amendment right to counsel, the defendant must make a *prima facie* showing that the government affirmatively acted "to intrude into the attorney-client relationship and thereby obtain the privileged information." *United States v. Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003). Assuming the defendant can make this showing, the government must then show by a preponderance "that all of the evidence it proposes to use, and all of its trial strategy, were derived from legitimate independent sources." *Id.* at 1072 (citations and internal quotation marks omitted). In other words, the defendant must show that the government violated her attorney-client relationship and thereby obtained relevant, privileged information that could prejudice her.

Defendant has not met her burden. She does not explain how a short, and largely non-substantive, post-indictment conversation with a prosecutor and an FBI agent assigned to her case might impact the outcome of her trial or otherwise prejudice her. No privileged or even relevant information was obtained during the encounter and therefore she cannot be prejudiced by it. *See United States v. Venegas*, 800 F.2d 868, 869-70 (9th Cir. 1986) (holding the defendant must show the prosecutorial misconduct actually prejudiced her); *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (same); *United States v. Morrison*, 449 U.S. 361, 365 (1981) (holding that even when the government deliberately violated the defendant's Sixth Amendment rights by questioning her without her attorney's knowledge, criticizing her attorney, and threatening her with a long jail term if she did not cooperate, dismissal of the indictment was not an appropriate remedy in the absence of demonstrable prejudice).

Courts have also denied motions to dismiss indictments even in egregious situations where the government's misconduct actually solicited relevant, incriminating statements by the defendant. *See, e.g., United States v. Solomon*, 679 F.2d 1246, 1250 (8th Cir. 1982) (concluding that even if the government's misconduct interfered with the defendant's right to counsel under the Sixth Amendment, the evidence used to obtain the conviction had been gathered prior to the constitutional intrusion and there was thus no demonstrable prejudice to the defendant, and the appropriate remedy was suppression of evidence obtained and not dismissal); *United States v. Medina-Medina*, 617 F. Supp. 1163, 1172 (S.D. Cal. 1985) (holding that although DEA agents created a situation that induced the defendants to

make incriminating statements post-indictment in violation of their Sixth Amendment rights, a prohibition of government use at trial of the statements would preserve the defendants' rights and sufficiently sanction the government). Therefore, the Court should deny Defendant's Motion.

### B. There Was No Fifth Amendment Violation

A defendant must make a similar showing of prejudice to succeed on a prosecutorial misconduct claim that is premised on the government's interference with the defendant's Fifth Amendment right against self-incrimination. Specifically, the defendant must show that "(1) the government was objectively aware of an ongoing, personal attorney-client relationship; (2) the government deliberately intruded into that relationship; and (3), as a result, the defendant suffered *actual and substantial prejudice*." *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) (emphasis added and citations omitted).

As discussed above, Defendant cannot make this showing. Therefore, the Court should deny her Motion.[1]

### III. THERE WERE NO DISCOVERY VIOLATIONS

There were no discovery violations here because the information was known to Defendant, immediately disclosed to defense counsel, and not relevant or material to the case.

The Constitution mandates that material evidence in the government's possession that is favorable to the defense must be disclosed to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83 (1963). Before there is a constitutional violation under *Brady*, three elements must be satisfied: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the prosecution, either willingly or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 288 (1999).

All three *Strickler* factors fail here. First and foremost, nothing was suppressed. The fact of the encounter with the AUSA was disclosed immediately to defense counsel. *See* Mot. at 3. This enabled

---

[1] The two cases that Defendant cites in support of her prosecutorial misconduct argument — *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993), and *United States v. Friedman*, 909 F.2d 705 (2d Cir. 1990) (incorrectly cited as a Ninth Circuit case, when it was a Second Circuit case) — are not on point. Those cases concerned inappropriate arguments that a prosecutor made to a jury during closing arguments. They did not involve an out-of-court, non-substantive encounter between a prosecutor, FBI agent, and the defendant like the one at issue here. Therefore, these cases are readily distinguishable.

defense counsel to take immediate action and question Gaviola, who obviously possessed all of the information regarding the encounter. Thus, it simply cannot be the case, as Gaviola alleges, that the communications were "undisclosed" and "conceal[ed]" from Gaviola and her defense counsel for two years, when she was a participant and her defense counsel was informed immediately. *Compare* Mot. at 6 *with* Mot. at 3 ("Later, AUSA calls the defendant's then-attorney, hands phone again to Defendant, and they talk."). Thus, because the evidence was not suppressed, but instead has been known by Gaviola for over two years and was disclosed immediately to defense counsel, prong two of the *Strickler* test is not met.

Moreover, even if there had been no disclosure, nothing occurred during the encounter that was either inculpatory or exculpatory. There was simply no discussion of anything material to the case, and Gaviola does not allege so. Nowhere in Gaviola's motion does she state that they discussed anything relevant to her prosecution or anything that was attorney-client privileged. Nothing relevant or material to a *Brady* violation occurred.

Finally, there was no prejudice. The encounter was non-substantive and was immediately disclosed to defense counsel. The encounter had no bearing on either the government's investigation (which had concluded) or trial (which had not yet begun). *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (*Brady* violation requires showing "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"). Thus, not a single *Strickler* factor has been met, and there is no discovery violation under the Due Process Clause, *Brady v. Maryland*, or its progeny.

In addition, there has been no violation of Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 requires the government provide the defense access to relevant evidence in the government's possession upon request, including, *inter alia*, "the substance of any relevant oral statement made by the defendant . . . if the government intends to use the statement at trial" and "defendant's written or recorded statement." Fed. R. Crim. Pro. 16(a)(1)(A), (B) (capitalization removed). Here, Gaviola's statements regarding her children's school or other pleasantries she briefly exchanged are not relevant to the case. The government will not use them at trial. The entire encounter was irrelevant and immaterial, and there is no recorded or written record of these statements. The fact of the conversation was

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
FOURTH MOTION TO DISMISS THE INDICTMENT

6

immediately disclosed to defense counsel, and there was nothing else to disclose to the defendant. There has been no violation of the government's discovery obligations.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Defendant's Motion and reset the jury trial.

Dated: October 6, 2025

ERIC GRANT
United States Attorney

By: /s/ *Veronica Alegría*
VERONICA M.A. ALEGRÍA
JOSEPH D. BARTON
Assistant United States Attorneys